## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  06-33059

DJ WEAVER DEVELOPMENT CO., LLC
d/b/a THE GAZEBO AT WATERFORD COVE

Debtor

W. GREY STEED, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF
DJ WEAVER DEVELOPMENT CO., LLC
d/b/a THE GAZEBO AT WATERFORD COVE

Plaintiff

v.

Adv. Proc. No. 07-3022

PARROTT MARINE SYSTEMS, INC.,
SHOREMASTER, and
GALVA FOAM MARINE INDUSTRIES, INC.

Defendants

## MEMORANDUM ON
## MOTIONS FOR SUMMARY JUDGMENT

**APPEARANCES:**     MOORE & BROOKS
                       Brenda G. Brooks, Esq.
                       Post Office Box 1790
                       Knoxville, Tennessee 37901
                       Attorneys for Plaintiff, W. Grey Steed, Trustee

                     THREADGILL LAW FIRM, P.C.
                       John O. Threadgill, Esq.
                       9724 Kingston Pike
                       Suite 701
                       Knoxville, Tennessee  37922
                       Attorneys for Defendant, Parrott Marine Systems, Inc.

BALL & SCOTT
  Christopher T. Cain, Esq.
  550 Main Avenue
  Suite 750
  Knoxville, Tennessee  37902
  Attorneys for Defendants, Shoremaster and
  Galva Foam Marine Industries, Inc.

HAGOOD, TARPY & COX, PLLC
  T. Lynn Tarpy, Esq.
  900 South Gay Street
  Suite 2100 Riverview Tower
  Knoxville, Tennessee  37902
  Attorneys for Debtor

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Debtor on March 22, 2007, seeking a turnover of property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 542 (2005) and seeking a determination that the Defendants violated the automatic stay of 11 U.S.C. § 362(a)(3) (2005).[1]   Answers were filed by the Defendants, Galva Foam Marine Industries, Inc. (Galva Foam) and Shoremaster, on April 10, 2007, and by Parrott Marine Systems, Inc. (Parrott Marine) on July 9, 2007.   Pursuant to the Amended Pretrial Order entered on February 8, 2008, the court is called upon to resolve the following issues:

> Whether pursuant to 11 U.S.C. §542 the defendants are responsible for the turnover of $94,836.00 paid by the debtor prepetition.

> Whether the defendants' ongoing failure to turnover property of the estate after being notified violates the automatic stay provision of 11 U.S.C. §362.

> What if any of the $94,836.00 paid by the debtor on the two dock contracts is property of the debtor.

> If any of the $94,836.00 is property of the debtor who is responsible or liable for turning over that property.

> If any of the $94,836.00 is property of the debtor, did either of the defendants violate the automatic stay provision of 11 U.S.C. §362.

On April 28, 2008, the Plaintiff filed a Motion for Summary Judgment (Plaintiff's Motion for Summary Judgment) accompanied by, as required by E.D. Tenn. LBR 7056-1, the Plaintiff's Brief in Support of Motion for Summary Judgment (Plaintiff's Brief) and a Statement of Undisputed Facts in Support of Motion for Summary Judgment (Plaintiff's Statement of Undisputed Facts), incorporating the following ten exhibits:   (A) the Plaintiff's Requests for Admissions dated

---

[1] The Complaint was filed by the Debtor while operating as a Debtor-in-Possession under Chapter 11.  Upon conversion of the case to Chapter 7 on June 5, 2007, the Chapter 7 Trustee, W. Grey Steed, was substituted as the Plaintiff pursuant to an Order entered on August 14, 2007.

3

February 22, 2008, propounded to the Defendants; (B) Parrott Marine's Responses to Requests for Admissions dated February 29, 2008; (C) Parrott Marine's Amended Response to Requests for Admissions dated March 18, 2008; (D) Responses to Requests for Admissions by Shoremaster and Galva Foam dated March 14, 2008; (E) Answer filed by Parrott Marine on July 9, 2007; (F) Excerpt from the September 21, 2006 deposition of Kirk Parrott in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (G) Excerpt from the November 16, 2006 proceedings in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (H) Memorandum Opinion dated January 17, 2007, in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (I) Judgment entered February 22, 2007, and Order denying a motion to alter or amend entered on March 16, 2007, in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; and (J) a letter dated November 14, 2005, from Garry Bowhall with Shoremaster to Kirk Parrott of Parrott Marine.

In accordance with E.D. Tenn. LBR 7007-1(a) and 7056-1(b), Shoremaster and Galva Foam filed the Defendants Shoremaster's and Galva Foam's Local Rule 7007-1 Response and Brief in Opposition to Plaintiff's Motion for Summary Judgment together with Shoremaster's and Galva Foams' Respo[nse] to Plaintiff's Statement of Undisputed Facts in Support of Motion for Summary Judgment (Shoremaster's and Galva Foam's Response to Plaintiff's Statement of Undisputed Facts) on May 2, 2008, attaching as an exhibit an excerpt from the November 16, 2006 Transcript of Proceedings in conjunction with litigation between the parties in the Chancery Court for Knox

County, Tennessee, styled *Parrott Marine Systems, Inc. v. Shoremaster and Galva Foam Marine Industries, Inc.*, No. 165747-2.

Parrott Marine did not timely file a response to the Plaintiff's Motion for Summary Judgment or to the Plaintiff's Statement of Undisputed Facts.  Accordingly, Parrott Marine "does not oppose the relief requested by the motion" and "the material facts set forth in the movant's statement will be deemed admitted."  E.D. Tenn. LBR 7007-1(a), 7056-1(b).[2]

On May 2, 2008, Shoremaster and Galva Foam filed the Defendants Shoremaster's and Galva Foam's Motion for Summary Judgment (Shoremaster's and Galva Foam's Motion for Summary Judgment) accompanied by the Defendants Shoremaster's and Galva Foam's Local Rule 7007-1 Brief in Support of Motion for Summary Judgment (Shoremaster's and Galva Foam's Brief) and Defendants Shoremaster's and Galva Foam's Local Rule 7056-1 Statement of Undisputed Material Facts (Shoremaster's and Galva Foam's Statement of Undisputed Facts) incorporating the following nineteen exhibits:  (A) Sale Agreement between Parrott Marine and the Debtor dated July 19, 2004, concerning Dock #1; (B) Sale Agreement between Parrott Marine and the Debtor dated March 18, 2004, concerning Dock #2; (C) Sale Agreement between Parrott Marine and the Debtor dated March 18, 2004, concerning Dock #3; (D) Sale Agreement between Parrott Marine and the Debtor dated March 18, 2004, concerning Dock #6; (E) Sales Agreement between Galva Foam and Parrott Marine dated March 18, 2004, concerning Dock #1; (F) Sales Agreement between Galva Foam and Parrott Marine dated March 18, 2004, concerning Dock #2; (G) Sales Agreement between Galva

---

[2] On October 3, 2008, Parrott Marine filed a Motion styled "Plaintiff's [sic] Motion to File a Late Response to Motion for Summary Judgment" and the Defendant's Response to Motion for Summary Judgment.  The Motion will be denied and the Response will not be considered.

Foam and Parrott Marine dated March 22, 2004, concerning Dock #3; (H) Sales Agreement between Galva Foam and Parrott Marine dated March 22, 2004, concerning Dock #6; (I) Excerpt from the January 31, 2008 deposition of Dennis Weaver; (J) a Loan Disbursement Check issued by First National Bank of Lenoir City dated March 31, 2004, labeled Loan Proceeds, payable to Galva Foam and Parrott Marine in the amount of $200,000.00; (K) letter dated October 20, 2005, from Dennis J. Weaver to Kirk Parrott; (L) Complaint filed November 30, 2005, commencing *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (M) letter dated February 27, 2006, from Garry Bowhall with Shoremaster to Dennis Weaver; (N) Answer and Counter-Claim dated March 13, 2006, in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (O) Memorandum Opinion dated January 17, 2007, in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (P) Judgment entered February 22, 2007, in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee; (Q) letter dated March 5, 2007, from Lynn Tarpy, attorney for the Debtor, to Christopher T. Cain and John O. Threadgill, attorneys for the Defendants; (R)  letter dated March 8, 2007, from Christopher T. Cain to Lynn Tarpy; and (S) Excerpt from the November 16, 2006 proceedings in *Parrott Marine Systems, Inc. v. Shoremaster, et al.*, No. 165747-2, Chancery Court for Knox County, Tennessee.

In accordance with E.D. Tenn. LBR 7007-1(a) and 7056-1(b), the Plaintiff filed the Plaintiff's Response to Shoremaster and Galva Foam's Motion for Summary Judgment, as well as the Plaintiff['s] Response to Defendants Shoremaster's and Galva Foam's Local Rule 7056-1 Statement

6

of Undisputed Material Facts (Plaintiff's Response to Defendants' Statement of Undisputed Material Facts) on May 22, 2008.

In its resolution of the cross motions for summary judgment, the court additionally takes judicial notice of the decision of the Tennessee Court of Appeals in *Parrott Marine Systems, Inc. v. Shoremaster, Inc., and Galva Foam Marine Industries, Inc.*, 2008 Tenn. App. LEXIS 490, 2008 WL 3875432 (Tenn. Ct. App. Aug. 21, 2008).

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (O) (2005).

## I

In March and July 2004, the Debtor contracted with Parrott Marine for the fabrication, delivery, and installation of four marine docks, numbered 1, 2, 3, and 6, at the following prices: Dock #1 - $293,037.00; Dock #2 - $234,948.14; Dock #3 - $142,257.56; and Dock #6 - $142,257.66.[3] SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 1, EXS. A-D. Docks #1 and #3 were manufactured, delivered, and installed, and all balances owed to Parrott Marine by the Debtor under the contracts were paid directly to Parrott Marine and are not at issue in this adversary proceeding. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶¶ 22, 23, COLL. EX. I at p. 11, lines 1-3. Docks #2 and #6 were to be built and installed in the future, "a year plus down the road." SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 6, COLL. EX. I at p. 10, lines 6-10. "Initial disbursements" to Parrott Marine, "due with signed contract

---

[3] The contract for Dock #1 was dated and signed on July 19, 2004, while the contracts associated with Docks #2, #3, and #6 are all dated March 18, 2004, and signed on March 30, 2004.

and approved plans," were $59,772.00 for Dock #2 and $35,064.00 for Dock #6. SHOREMASTER'S

AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶¶ 3, 5, Exs. B, D. Notwithstanding that Docks #2

and #6 were not scheduled to be built, the Debtor paid these "initial disbursements," totaling

$94,836.00, in order "to hold the price" because steel prices "were going out of sight."

SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 6, COLL. EX. I at p. 10, lines 13-23.

On March 18 and 24, 2004, Parrott Marine entered into Sales Agreements with Galva Foam[4]

for the fabrication and manufacture of the four docks. SHOREMASTER'S AND GALVA FOAM'S STMT.

OF UNDISP. FACTS ¶ 7, Exs. E - H.[5] On March 31, 2004, First National Bank issued check number

61972 payable jointly to Galva Foam and Parrott Marine in the amount of $200,000.00 for "loan

proceeds" (Loan Disbursement Check).[6] SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP.

---

[4] Galva Foam is a wholly-owned subsidiary of Shoremaster. DEFS.' RESP. TO PL.'S STMT. OF UNDISP. FACTS,
Ex. A at 131, lines 14-16.

[5] In the Plaintiff's Response to Defendants' Statement of Undisputed Facts, the Plaintiff does not, in response
to several of Shoremaster's and Galva Foam's Statement of Undisputed Facts, including paragraph 7, comply with the
requirement of Local Rule 7056-1(b) that

[t]he response [to the movant's statement of undisputed material facts] must separately address each
paragraph of the movant's statement, by—

(1) agreeing that the fact is undisputed;
(2) agreeing that the fact is undisputed for the purpose of summary judgment only; or
(3) stating that the fact is disputed as demonstrated by specific citation to material allowed
by FED. R. CIV. P. 56(c).

Absent a response in accordance with the requirements of this subdivision, the material facts set forth
in the movant's statement will be deemed admitted.

Rather, the Plaintiff's responses are stated thusly: "Objection" and then an alleged evidentiary basis for objecting to the
undisputed fact or exhibit is stated. The court finds that these responses are not in compliance with Local Rule 7056-1(b)
and therefore deems these paragraphs of Shoremaster's and Galva Foam's Statement of Undisputed Facts admitted by
the Plaintiff.

[6] The parties do not dispute that this $200,000.00 check represents the proceeds of a loan to the Debtor.

FACTS ¶ 16, EX. J.  After receiving the Loan Disbursement Check, the Debtor's president, Dennis

Weaver, delivered the check to Parrott Marine, leaving it with the secretary for Kirk Parrott, the

president of Parrott Marine.  SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 16,

COLL. EX. I at p. 25, lines 2-4.  The following day, Kirk Parrott called the Debtor and requested that

the Loan Disbursement Check be rewritten and payable only to Parrott Marine, but First National

Bank would not agree to reissue the check.  SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP.

FACTS ¶¶ 19-20, COLL. EX. I at p. 25, lines 5-16. Thereafter, the Loan Disbursement Check was

endorsed and the entire $200,000.00 was deposited into Parrott Marine's account at AmSouth Bank.

SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 21.  Parrott Marine then paid

Galva Foam the "initial disbursements" due it under the Sales Agreements for the four docks which

amounted to $63,000.00 for Dock #1; $44,829.00 for Dock #2; $27,166.00 for Dock #3; and

$27,166.00 for Dock #6. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 21, EXS.

E-H.  Parrott Marine retained the balance of the Debtor's "initial disbursements" to it under the

contracts for Docks #2 and #6 of $22,841.00.  PL.'S STMT. OF UNDISP. FACTS ¶ 1, EX A at ¶ 25, EX.

B at ¶ 25.

In an October 20, 2005 letter, the Debtor requested that Parrott Marine terminate the contracts

for Docks #2 and #6 and asked for "a full refund of [the] deposit ($94,836)." SHOREMASTER'S AND

GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 24, Ex. K.  Kirk Parrott agreed "to pay [the Debtor] my

part of that deposit and give [the Debtor] the rest when Galva-Foam returned it to me." PL.'S STMT.

OF UNDISP. FACTS ¶ 5, EX. F at p. 93, lines 8-10.  Thereafter, in a letter dated November 3, 2005, to

Gary Bowhall with Galva Foam and Shoremaster, the Plaintiff, through its president, Kirk Parrott,

9

authorized Galva Foam to return the $71,995.00 deposit on Docks #2 and #6 paid to it by Parrott

Marine directly to the Debtor.  Pl.'s Stmt. of Undisp. Facts ¶ 1, Ex. A at ¶ 27, Ex. B at ¶ 28.[7]

Specifically, Kirk Parrott's November 3, 2005 letter states:

> Gary,
>
> This letter is to authorize you to return the deposit paid to Galva-Foam by Parrott
> Marine Systems, Inc., in the amount of $71,995.00, directly to Dennis Weaver.  I
> agree that this renders the contract between Parrott Marine Systems, Inc. and
> Galva-Foam null and void for docks #2 and #6 at Dennis Weaver's development at
> Waterford Cove.
>
> Sincerely,
>
> s/  Kirk Parrott
> Kirk Parrott
> Owner/President

Pl.'s Stmt. of Undisp. Facts ¶ 7, Ex. A at ¶ 27.  The $71,995.00 "initial disbursements" made by

Parrott Marine to Galva Foam for Docks #2 and #6 were not refunded to the Debtor or Parrott

Marine.  Pl.'s Stmt. of Undisp. Facts ¶¶ 10, 11, Ex. H at 11, 14; Shoremaster's and Galva

Foam's Stmt. of Undisp. Facts, Ex. O at 11, 14; *Parrott Marine*, 2008 Tenn. App. LEXIS 490,

at *7-9, 2008 WL 3875432, at *3.


On November 30, 2005, Parrott Marine filed a Complaint in the Chancery Court for Knox

County, Tennessee, styled *Parrott Marine Systems, Inc. v. Shoremaster and Galva Foam Marine

Indus. Inc.*, No. 165747-2, alleging a breach of "dealer/distributor/marketer" agreement but not

alleging any claim relating to Docks #2 and #6.  Shoremaster's and Galva Foam's Stmt. of

Undisp. Facts ¶ 25, Ex. L.  On March 13, 2006, Galva Foam and Shoremaster answered Parrott

---

[7] Shoremaster's and Galva Foam's Response to Plaintiff's Statement of Undisputed Facts is misnumbered.

Marine's Complaint and filed a Counter-Claim for breach of contract and resulting damages
concerning, in part, Docks #2 and #6. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP.
FACTS ¶ 27, EX. N. Although invited to participate in the action to recoup monies owed by Parrott
Marine, the Debtor did not intervene or otherwise participate in the state court action, and trial was
held on November 16, 2006. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶¶ 26,
28-29, EX. M. The judge in the state court proceeding filed a Memorandum Opinion on January 17,
2007, and, on February 22, 2007, entered a Judgment in favor of Galva Foam and Shoremaster on
Galva Foam's and Shoremaster's Counter-Claim in the amount of $4,120.78 after crediting Parrott
Marine with, *inter alia*, the $71,995.00 deposits Parrott Marine paid to Galva Foam on Docks #2 and
#6.[8] PL.'S STMT. OF UNDISP. FACTS ¶ 11, EXS. H, I; SHOREMASTER'S AND GALVA FOAM'S STMT.
OF UNDISP. FACTS ¶¶ 29, 32, EXS. O, P; *Parrott Marine*, 2008 Tenn. App. LEXIS 490, at *4, 2008
WL 3875432, at *2.

The Debtor filed the Voluntary Petition commencing its case under Chapter 11 of the
Bankruptcy Code on December 19, 2006. On March 5, 2007, the Debtor, by letter, requested that
Shoremaster and Galva Foam return the deposits made on Docks #2 and #6 and commenced this
adversary proceeding on March 22, 2007, when its request was declined. SHOREMASTER'S AND
GALVA FOAM'S STMT. OF UNDISP. FACTS ¶¶ 33-35, EXS. Q, R. In its Complaint, the Debtor averred

---

[8] Specifically, the Chancellor found that Parrott Marine was liable to Galva Foam and Shoremaster for damages
of $117,115.79 on their Counter-Claim; that from that amount, Parrott Marine was entitled to a credit of $25,000.00 for
a payment it had made on its account but not credited by Galva Foam and Shoremaster, leaving a balance of $92,115.79;
that Parrott Marine was entitled to an additional credit of $71,995.01 representing the "initial disbursements" Galva
Foam failed to refund on Docks #2 and #6, leaving a balance of $20,120.78; that Parrott Marine was entitled to recover
$16,000.00 from Galva Foam and Shoremaster for storing inventory; and that the net judgment to which Galva Foam
and Shoremaster were entitled to recover from Parrott Marine on their Counter-Claim was $4,120.78. PL.'S STMT. OF
UNDISP. FACTS, EX. H at 14-15; SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS, EX. O at 14-15.

that it paid a total of $94,836.00 to Parrott Marine as a deposit for Docks #2 and #6, and that Parrott

Marine retained $22,841.00 and paid the remaining $71,995.00 to Galva Foam and/or Shoremaster.

COMPL. ¶ 1; PL.'S STMT. OF UNDISP. FACTS ¶¶ 1, 3; SHOREMASTER'S AND GALVA FOAM'S STMT. OF

UNDISP. FACTS ¶¶ 36-37.  The bankruptcy case was converted to Chapter 7 on June 5, 2007, at which

time the Plaintiff was appointed Chapter 7 trustee and was substituted as the Plaintiff.

## II

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R.

CIV. P. 56(c) (applicable in adversary proceedings pursuant to Rule 7056 of the Federal Rules of

Bankruptcy Procedure).  When deciding a motion for summary judgment, the court does not weigh

the evidence to determine the truth of the matter asserted, but instead, simply determines whether

a genuine issue for trial exists.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the initial burden of proving that there are no genuine issues of

material fact, thus entitling it to judgment as a matter of law.  *Owens Corning v. Nat'l Union Fire

Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001).  The burden then shifts to the nonmoving party to

produce specific facts showing a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) (citing FED. R. CIV. P. 56(e)).  The nonmoving party must

cite specific evidence and may not merely rely upon allegations contained in the pleadings.  *Harris

v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  The facts and all resulting inferences are

viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the

court will decide whether "the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106

S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at

2510.

Having reviewed both Motions for Summary Judgment, the respective Statements of

Undisputed Facts and all Responses thereto, the exhibits, and the record as a whole, the court finds

that no genuine issues of material fact exist with regard to the Plaintiff's turnover action under

§ 542(a). The Defendants, Shoremaster and Galva Foam, are entitled to summary judgment on this

issue as a matter of law because they do not hold or otherwise control property of the Debtor's estate

which is subject to turnover. The court also finds that the Plaintiff is entitled to summary judgment

as a matter of law that the Defendant, Parrott Marine, is in possession and/or control of property of

the Debtor's estate and shall be required to turn over the sum of $94,836.00 to the Plaintiff.

### III

The commencement of the Debtor's case created its bankruptcy estate, consisting of "all legal

or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C.

§ 541(a) (2005), which remain property of the estate until abandoned by the trustee or the case is

closed. 11 U.S.C. § 554(c) (2005). Accordingly, any entity in possession or control of property of

the estate must turn it over to the trustee, who succeeds to all interests of the estate and inherits the

13

responsibility to collect property of the estate, reduce it to money, and account for it for the best

interests of creditors.  *See* 11 U.S.C. §§ 323(a), 542(a), 704(1), (2) (2005).

The Plaintiff's Complaint is grounded on § 542(a)[9] of the Bankruptcy Code which requires

an entity, other than a custodian, in possession, custody, or control, during the case,
of property that the trustee may use, sell, or lease . . . shall deliver to the trustee, and
account for, such property or the value of such property, unless such property is of
inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).  To prevail, the Plaintiff must prove that:  "1) during the case; 2) an entity other

than a custodian 3) was in possession, custody or control; 4) of property that the trustee could use,

sell or lease; [and] 5) that such property is not of inconsequential value or benefit to the estate."  *In

re Patton*, 200 B.R. 172, 177 (Bankr. N.D. Ohio 1996).  "To justify turnover, [the Plaintiff] has the

burden of proving, by a preponderance of the evidence, that [the Defendants] had actual or

constructive possession of the amounts [sought]."  *Miracle-Ear, Inc. v. M.D. Consultants, Inc.*, 338

B.R. 15, 28 (N.D. Ohio 2006).

The threshold issue is whether the $94,836.00 paid by the Debtor to Parrott Marine as a

deposit[10] for Docks #2 and #6 constitutes property of the estate and is therefore subject to turnover

under § 542(a).  *See, e.g., In re Schoonover*, 2006 Bankr. LEXIS 2892, at *6, 2006 WL 3093649,

at *2 (Bankr. D. Kan.. Oct. 30, 2006) (analyzing "possession, custody, and control" of bank account

funds for purposes of § 542(a)).

---

[9] The automatic stay issues raised in the Complaint under 11 U.S.C. § 362 (2005) as set forth in the February 8, 2008 Amended Pretrial Order are not raised in either summary judgment motion and are not resolved herein.

[10] Both Parrott Marine and Shoremaster and Galva Foam considered the $94,836.00 as a "deposit."  *See* PL.'S STMT. OF UNDISP. FACTS, EX. F at p. 93, lines 8-10; SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS ¶ 21, EX. S at p. 39, lines 8-14.

"Congress intended for the scope of § 541 to be broad, but the legal or equitable interests of a debtor's bankruptcy estate cannot rise above that of the debtor pre-petition. *In re Cupp*, 383 B.R. 84, 87-88 (Bankr. E.D. Tenn. 2008) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309, 2313, 76 L. Ed. 2d 515 (1983), and *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir. 1987)). "What constitutes property of the estate is determined generally by state law," *Crocker v. Calderon (In re Calderon)*, 363 B.R. 537, 541 (Bankr. M.D. Tenn. 2003) (citing *Oakland Gin Co., Inc. v. Marlow (In re The Julien Co.)*, 44 F.3d 4426, 429 (6th Cir. 1995)). As specified by the March 18, 2004 Sale Agreements between the Debtor and Parrott Marine regarding Docks #2 and #6, the governing state law is Tennessee. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS EXS. B, D, at 5, ¶ 15.

The payment terms set out in the Sale Agreement for Dock #2 required an "initial disbursement due with signed contract and approved plans" of $59,772.00, with $82,186.00 due upon the arrival of the crew, and the final $92,990.14 due upon completion. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS EX. B at 2. Similarly, the payment terms for Dock #6 required an "initial disbursement" of $35,064.00, with $50,385.50 due upon arrival of the crew, and $56,808.06 due upon completion. SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS EX. D at 2. The additional Terms of Agreement, which are identical for both Sale Agreements, address specifications and changes, warranties, excusable delays, sites, concealed conditions, utilities, taxes, credit and payment terms, security interests, title and risk of loss, limitations of liabilities and indemnities, breach of contract and remedies, permits, governing law, jurisdiction, attorney fees, and interest, and general acceptance. *See generally*, SHOREMASTER'S AND GALVA

FOAM'S STMT. OF UNDISP. FACTS EXS. B, D.  As previously discussed, the Debtor and Parrott

Marine did not contemplate the fabrication of Docks #2 and #6 at the time the March 2004 contracts

were executed.  Rather, the contracts were entered into and the "initial disbursements" were made

to secure the price on the escalating cost of steel with the understanding that Docks #2 and #6 would

be built at an unspecified date in the future, "a year plus down the road."

Specifically addressing breach of contract and remedies, the March 2004 contracts between

Parrott Marine and the Debtor provide as follows:

> In the event of a breach of this contract by Buyer, Seller will have the right to all
> remedies provided in the Uniform Commercial Code.  Breach of this contract will
> include but not be limited to the following:  Buyer becomes bankrupt or insolvent;
> petition in bankruptcy is filled [sic] by or against Buyer; a receiver is appointed for
> Buyer; wrongful rejection of goods by Buyer; wrongful revocation of acceptance of
> goods by Buyer; Buyer repudiates or fails to perform any of the terms of this contract
> in whole or in part.

SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS EXS. B, D, at 5, ¶ 12.  The contracts

are otherwise silent as to the effect of repudiation or termination with respect to the retention or

return of the deposits or initial disbursements made by the Debtor to "hold the price."

"The central tenet of contract construction is that the intent of the contracting parties at the

time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse

Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002).  "When interpreting a contract, the court 'does not

attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their

intentions as actually embodied and expressed in the contract as written.'" *Smith v. Feltus*, 2001

Tenn. App. LEXIS 297, at *18, 2001 WL 432497, at *6 (Tenn. Ct. App. Apr. 23, 2001) (quoting

*Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App.

1993)).  "If the contract is ambiguous or silent on its face, however, the intention of the parties must

be gathered from the whole instrument taken in connection with the surrounding circumstances[,]"

*Greyhound Lines, Inc. v. Sharpe*, 565 F. Supp. 419, 421 (E.D. Tenn. 1983), and "[a] qualifying word

which must be read into every contract is the word 'reasonable,' or its equivalent 'reasonably.'"

*Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993) (quoting *Moore v. Moore*, 603 S.W.2d

736, 739 (Tenn. App. 1980)).

In the absence of explicit terms, "'[t]he interpretation given by the parties themselves to the

contract as shown by their acts will be adopted by the court, and to this end not only acts but the

declarations of the parties may be considered.'"  *APCO Amusement Co., Inc. v. Wilkins Family Rests.*

*of Am., Inc.*, 673 S.W.2d 523, 527 (Tenn. Ct. App. 1984) (quoting *Bailey v. Brister*, 353 S.W.2d 564,

568 (Tenn. Ct. App. 1961)).  Additionally, when a contract is silent as to terms, "factors outside the

four corners of the contract may be considered to determine the intent of the parties."  *Warden v.*

*Wortham*, 2003 Tenn. App. LEXIS 654, at *15-16, 2003 WL 22098029, at *5 (Tenn. Ct. App.

Sept. 11, 2003) (citing *Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985)); *see also Hardeman*

*County Bank v. Stallings*, 917 S.W.2d 695, 698 (Tenn. Ct. App. 1995) ("[W]here an executed

agreement refers to other documents and makes their conditions part of the executed agreement, the

documents must be interpreted together as the agreement of the parties.") (quoting *Engert v. Peerless*

*Ins. Co.*, 382 S.W.2d 541, 547 (Tenn. Ct. App. 1964)).  "[W]hen a court is called upon to supply a

missing term with a reasonable one, it must consider the subject matter of the contract, the situation

of the parties, their intention in what they contemplated at the time the contract was made, and the

circumstances attending the performance[ and t]he course of conduct of the parties [are] strong

evidence of the parties' original intent." *Johnson v. Welch*, 2004 Tenn. App . LEXIS 86, at *24-25,
2004 WL 239756, at *17 (Tenn. Ct. App. Feb. 9, 2004) (citing *Minor*, 863 S.W.2d at 54, and *Pinson
& Assocs. v. Kreal*, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990)).

Here, although the contracts themselves did not address the result of termination upon the
deposits, it is clear from the actions of the Debtor and Parrott Marine that the $94,836.00 paid to
Parrott Marine by the Debtor was considered by all parties to be a conditional down payment or
deposit for Docks #2 and #6.[11]  Parrott Marine acknowledged the Debtor's entitlement to a refund
of the two deposits requested by the Debtor in Dennis Weaver's October 20, 2005 letter to Kirk
Parrott as is established by Mr. Parrott's November 3, 2005 letter to Shoremaster and Galva Foam
in which Parrott Marine authorized Galva Foam to return $71,995.00 of the deposit to the Debtor
and stated that the Sales Agreements between Parrott Marine and Galva Foam for the fabrication of
Docks #2 and #6 were "null and void."

Upon the termination of the Parrott Marine contracts in October 2005, the Debtor was
entitled to reimbursement of the deposits in their entirety.  Because the Debtor was entitled to the
return of the $94,836.00 deposit paid to Parrott Marine upon its termination of the contracts for
Docks #2 and #6, these funds constitute property of the estate under § 541(a) that have not been
returned to the Plaintiff and are subject to turnover under § 542(a).

It is undisputed that the entire proceeds of the $200,000.00 loan from First National Bank
to the Debtor, as represented by the March 31, 2004 Loan Disbursement check, was deposited by

---

[11] *See supra* n. 10.

Parrott Marine to its account in AmSouth Bank and that $94,836.00 of those proceeds represented the Debtor's deposit on Docks #2 and #6 pursuant to its contracts with Parrott Marine. Of the $94,836.00 deposited, $71,995.00 was, in turn, paid by Parrott Marine to Galva Foam for the anticipated future construction of Docks #2 and #6. As was determined by the state court, Parrott Marine was entitled to a refund of the $71,995.00 following termination of the Sales Agreements with Galva Foam. Specifically, the Chancellor, in his January 17, 2007 Memorandum Opinion filed in the state court, found that

> Defendants [Shoremaster's and Galva Foam's] only claim for damages as a result of this breach is for lost profits. There is no proof of any other damages nor are any other damages sought. That being the case defendants [Shoremaster and Galva Foam] have established nothing to warrant detention of the down payment made on each of these contracts. Those down payments totaled $71,995.01.[12] Plaintiff [Parrott Marine] should either be refunded that amount or given credit against any balance owed on the inventory.
>
> The court finds that on the inventory plaintiff [Parrott Marine] owed [Shoremaster and Galva Foam] $117,115.79. From that amount [Parrott Marine] should be credited $25,000 for check number 2916 paid June 6, 2005, leaving a balance of $92,115.79. From that amount $71,995.01, representing the down payments [on Docks #2 and #6], should be deducted leaving a balance of $20,120.78. Plaintiff [Parrott Marine] is entitled to recover $16,000.00 for the period of November 2004 through June 2005 for storing defendants' [Shoremaster's and Galva Foam's] inventory, servicing dealers and so forth.  this leaves a balance of $4120.78. Judgment is therefore awarded in that amount in favor of the counter-plaintiffs [Shoremaster and Galva Foam] and against the counter-defendant, Parrott Marine.

PL.'S STMT. OF UNDISP. FACTS EX. H at 14-15; SHOREMASTER'S AND GALVA FOAM'S STMT. OF UNDISP. FACTS EX. O at 14-5 (*aff'd by Parrott Marine*, 2008 Tenn. App. LEXIS 490, at *4, 2008 WL 3875432, at *2).

---

[12] The down payments, in fact, totaled $71,995.00; however, the court, in its discussion of the state court ruling, will use the Chancellor's $71,995.01 figure.

19

In summary,[13] the state court found that Parrott Marine owed Shoremaster and Galva Foam $117,115.79 on their Counter-Claim; that Parrott Marine was entitled to a credit against that amount for a $25,000.00 payment it made to Shoremaster and Galva Foam in June 2005 for which it had not previously received a credit; that Parrott Marine was entitled to an additional credit of $71,995.01 against the $117,115.79 it owed Shoremaster and Galva Foam attributable to the deposits made by Parrott Marine to Galva Foam under the terms of the March 2004 Sales Agreements relating to Galva Foam's construction of Dock #2 ($44,829.00) and Dock #6 ($27,166.00); and that Parrott Marine was entitled to recover $16,000.00 from Shoremaster and Galva Foam in *quantum meruit* storage fees.  Thus, after all credits and set offs, Shoremaster and Galva Foam were entitled to a net judgment against Parrott Marine in the amount of $4,120.78.  The state court's findings of fact and judgment were affirmed "in all respects," on appeal.  *See Parrott Marine*, 2008 Tenn. App. LEXIS 490 at *12, 2008 WL 3875432 at *5.

Crediting the $71,995.00 Shoremaster and Galva Foam received from Parrott Marine for the fabrication of Docks #2 and #6 against damages owed them by Parrott Marine effectively provided Parrott Marine with a refund of the $71,995.00 in down payments paid to Galva Foam out of the Debtor's $94,836.00 deposit made to Parrott Marine.  Accordingly, Shoremaster and Galva Foam have been divested of any interest in those funds and do not hold and/or otherwise control property of the Debtor's estate.  As such, these Defendants are entitled to a judgment as a matter of law and Shoremaster's and Galva Foam's Motion for Summary Judgment shall be granted.  The Complaint

---

[13] *See supra* n. 8.

shall, with respect to the Plaintiff's § 542(a) turnover action, be dismissed as to Shoremaster and Galva Foam.

Because the $71,995.00 credit allowed Parrott Marine by the state court against the $117,115.79 in damages it owed Shoremaster and Galva Foam provided Parrott Marine with a refund of the $71,995.00, this sum, in addition to the $22,841.00 retained by Parrott Marine from the deposits made by the Debtor under the terms of the March 2004 contracts with Parrott Marine on Docks #2 and #6, is property of the Debtor's estate.  As such, Parrott Marine is required to turn over the entire $94,836.00 to the Plaintiff.  However, because money is fungible, because Parrott Marine no longer has the same dollars delivered to it by the Debtor through the March 31, 2004 Loan Disbursement Check, and because § 542(a) allows the trustee to recover the property "or the value of such property," the court will award the Plaintiff a money judgment for the $94,836.00.  *See Schoonover*, 2006 Bankr. LEXIS 2892, at *10, n.18, 2006 WL 3093649, at *2, n.18.

In summary, the Plaintiff's Motion for Summary Judgment will be denied as to Shoremaster and Galva Foam.  As there are no genuine issues of material fact in dispute, the Plaintiff's Motion for Summary Judgment shall be granted as it pertains to Parrott Marine.

While the court's ruling on the Plaintiff's Motion for Summary Judgment and on Shoremaster's and Galva Foam's Motion for Summary Judgment is dispositive of the Plaintiff's § 542(a) turnover action, the ruling is nonetheless interlocutory because the Plaintiff's claim that the actions of the Defendants violated the automatic stay remains unresolved.  A status conference will be set to fix an appropriate trial date on the automatic stay issues.  *See* FED. R. CIV. P. 56(d).

21

An order consistent with this Memorandum shall be entered.


FILED:  November 5, 2008

                               BY THE COURT

                               /s/  RICHARD STAIR, JR.

                               RICHARD STAIR, JR.
                               UNITED STATES BANKRUPTCY JUDGE